2012-2002 PENTEL v. KAPPOS 2012-2013 PENTEL v. KAPPOS Mr. Adams, good morning. You may proceed. Good morning, Your Honor. May it please the Court? The Board affirmed the rejection of Claim 1 based on McCall and view of Colfer. Claim 1 required a writing implement having a main body with a grip attached adhesively secured to the main body, and the grip is comprised of a viscoelastic material positioned around a shell that has lips at the end that retain the viscoelastic material centered on the shell. That's Claim 1. The Board affirmed ten separate hierarchical rejections against Claim 1. Some of those used Colfer as a primary reference. One used McCall as a primary reference. When we get to Claim 6, Claim 6 differs from Claim 1 in that it requires that the grip be placed in a recess in the main body of the writing implement. That's one of the alternatives, isn't it? That's not an alternative, Your Honor. That's specified in Claim 6 as a limitation. Okay. So the difference between Claim 1 and Claim 6 is that Claim 6 requires that the grip be placed in a recess so that it's flush. The examiner rejected Claim 6 on two grounds. One was McCall in view of Colfer. An examiner said, in applying the art of the claim and bearing in mind the rejection of Claim 1 based on McCall in view of Colfer, Based on that rejection, the obviousness of placing the McCall's bladder on Colfer's shell with the bladder retained between the shell lids and releasably securing the shell and bladder grip to the writing implement has been conclusively determined. That would be the starting point to analyze Claim 6. And the examiner took that prior art, that obviousness combination, and said it would be obvious to place the grip in a recess as taught by McCall to make it flush with the main body as taught by McCall. And the board didn't think that was persuasive? Your Honor, the board never addressed it. The board did not address that rejection. The board considered a rejection of taking the Colfelt grip, which was the shell and a sponge rubber, and substituting it in the grip of McCall. And it also considered taking the fixed grip that was in McCall and putting it on a shell such as taught by Colfer. I think part of the confusion arose because McCall teaches two embodiments. It illustrates one embodiment in which there's a viscoelastic material contained in a recess that's surrounded by a sheath. And it's a flexible sheath. And when you use the writing implement, you can press down on the sheath and compress the viscoelastic material. So it deforms to the shape of the finger. Wasn't the board simply responding to the arguments that were made in the briefs? I mean, the board obviously disagreed with the examiner's rejection, and then in addition responded to the other arguments that were made in support of this rejection and found that, no, those arguments don't hold up. But the threshold question, I don't see where the board did address the rejection. The board did not address the rejection of modifying McCall in view of Colfelt. Well, it didn't sustain the rejection, so can't we assume the board wasn't persuaded? Oh, but it didn't analyze, it didn't use the rationale. It didn't discuss the basis of the rejection that the examiner made. Couldn't it arrive at an independent conclusion on its own based on the arguments that Pentel made in its brief? And wasn't there an oral argument in this case? Yes, there was, Your Honor. And couldn't the board have, after listening to those arguments, simply pushed the examiner's analysis to the side and said, here's what the issue is, and this is why it's not obvious as well? I don't understand that to be the case. I don't agree, Your Honor. I think the issue on appeal is the examiner's rejection. Could I see if I could help, at least clarify my own understanding of that? My understanding is that the board was saying if you start with McCall, with the thing recessed into the pen, there's no reason to add shoulders, and therefore it's not obvious over the prior argument. What you're saying is if you start with Colfelt, with the thing with lips, it's obvious to recess that structure because of McCall. Am I understanding what you're saying? Basically, yes, Your Honor. The examiner, what the board never reached, and where they got sidetracked. They said if you have the thing in recess, there's no reason to have lips. Right, that's what you're saying. What you're saying is if you have the thing with lips, there's a reason to put it into the recess, and that makes it obvious. Yes. But back to the examiner's rejection. That was a reluctant yes. Do you want to explain why it was reluctant? Well, because the grip in both the patent- I mean, it's always a good idea to agree with the judge. Yes, I was aware of that part, Your Honor. But the- We're having trouble with that today. The grip is a pre-constructed structure. The claim requires that it be releasably secured. So you have a grip, a viscoelastic grip. You attach it to a writing implement. And in the case of Claim 1, it could be just inserted over the writing implement. And in the case of Claim 6, it's inserted in recess. But you're making it more complicated than I thought it was. Well, that's- The board, I think, also- I think your argument was if you start with cofellas, which is you have this structure with the lips on it, then it's obvious to insert that into a recess as disclosed in McCall. Am I misunderstanding? It's actually the obviousness is more apparent if you go one step more. The rejection is based on the bladder grip of McCall, which is not illustrated. It's described but not illustrated. And the description says, if you want to make the grip removable, you can make it in the form of a bladder, a tubular bladder inserted onto the writing. The rejection says, well, once Gilded Heart knows you want to make it removable, Colfell teaches a way to make a grip removable. You put it on a sleeve or a shawl. So it would be obvious to take that bladder- Removable out of the recess, yeah. Removably attached to and from a writing. No, but what you're saying is even if it's in the recess, you want to have the lips so that you can remove it. Well, if I could answer that, you're on this one. Once you have the grip and it's on the shell, that's the pre-constructed grip. You can put it on the outside, or you can put it in a recess. If you put it in a recess, the lips would still be there, as in the case of the band. It would be more of a stretch to somehow remove the lips because you're going to put it in a recess. The shoulders of the recess don't hold the viscoelastic grip. The lips on the shell hold it. And the shoulder holds the shell in place. So it's just whether it would be obvious to take an existing grip that's on a shell, if you wanted to put it in a recess, would that have been obvious? And the fact that you have lips that would go into the recess and the recess has shoulders, I don't see where that negates obviousness. We've been focused on Rejection 1 just to get Rejection 2 on the record perhaps out of the way. You do agree that the examiner was wrong with regard to the 488 teaching a recess? Yes. So the board got that right? Well, yes, the board got that right, but the board should have done, Your Honor. The board recognized the examiner misread the claim. And this is an inter-parties re-exam. You have a statutory estoppel effect. And when the board knew the examiner misread the claim, the examiner also, I think, misread the claim as did the other rejection. But that, the art, fulfilled the mistake because the art had McCulloch and had a recess. So after recognizing the state, you can still apply the prior art in a way to beat the claim. But the examiner misinterpreted the claim. Mr. Adams, you're into your rebuttal time, but we'll give you a little extra time if you need it. I'd like you to comment very briefly on your due process argument. Yes, Your Honor. Since the board never addressed the rejection that the examiner made, and I don't see anything in the record where the board addressed the examiner's rejection, which the examiner referred to the re-exam on page 39. The examiner explicitly referred to taking the unillustrated bladder grip for the reference of McCulloch and putting it on a shell to facilitate positioning and attachment. That's the rejection of Claim 1. That's the rejection of Claim 6. The board never addressed it. They thought the examiner was saying take the fixed grip of McCulloch and somehow put that on a shell and why would you do it and put lips on it? Or the board also considered taking Kohlfeldt's grip and sticking it into the recess of McCulloch. Were there alternate theories presented to the board or didn't you have an opportunity to respond? Well, there was a lot of discussion about all kinds of combinations of references. But the examiner's rejection is clear. The examiner made a rejection which still hasn't been addressed. And if the board doesn't address the rejection, isn't that what we're appealing? The board's decision over attorney's examiner's rejection. I thought we were appealing the board's decision that it was non-obvious. Yes, based on the ARC. And also aren't we appealing the examiner's rejection? I thought that's what the board dealt with. I didn't think we dealt with that. I thought we dealt with what the board did. But this is, I think, part of the due process argument. That we never had a chance to really address the exact rejection that the board made in reversing the examiner. The board never addressed the examiner's rejection. All right, thank you. We'll restore your rebuttal. Thank you. Mr. Kelly? Good morning. Good morning, Mayfield Court. The board was right to reverse the examiner's obviousness rejection in this case because the examiner had not made out a prime case of obviousness. Let me ask you about that. Put aside the question of whether they addressed the examiner's rejection or due process. Let's just focus on the question of whether this is obvious. If you start with COPA and why isn't it obvious to put the thing with the lips on it into a recess as shown by McCall? To answer that specific question, Your Honor, it's because you would defeat every advantage that Kohlfeldt teaches in the art. You would defeat the adjustability of Kohlfeldt's structure. You would defeat the expansion ability of Kohlfeldt's structure. And the one thing that you have left, the lips, you'd make them unnecessary because the wall of McCall's structure gives you the exact same function. The problem with the obviousness analysis, and I think what we see here this morning is it sort of evolving and almost itself demonstrates non-obviousness here, is that the rejection came in two acts. We had Act 1, which was Claim 1. It didn't have the recess in it. That's what the examiner rejected. And then Quytek tried to amend around that and put in the recess limitation. The examiner didn't address that limitation. The examiner just said, I'm going to reject it for the reasons that I already gave you with Claim 1. Look back at the request. But those initial rejections didn't account for the recess. Where does Kohlfeldt talk about the expandability? And where does the board talk about that? As being defeated by putting in the recess? I mean, we're dealing here with pretty simple technology that does not block appliance. I understand that, Your Honor, and I acknowledge that. I acknowledge that when we have common objects that we see every day, it's easy to be presented with an object and then to just determine from looking at it, it's obvious. Well, that's not the argument here. The argument is you start with Kohlfeldt with this shell of lips and there's a reason to put it into a recess. Respectfully, Your Honor, there is not a reason to put it into a recess. What you have in McCall... With the other part of the pen? But McCall teaches a grip that's in a recess and flushed with the outer part of the pen. Right. The question is, why then, other than simply to meet the claim limitations, would we take that grip, pull it out of the recess, put it in an 80-year-old adjustable thimble and put it back into the recess? There's simply no articulation of a reason to do that. They suggest that it helps with the removability. Well, the board found, as a finding of fact, that Kohlfeldt does not teach that the purpose of the lips is for removability. The purpose of the lips is to squeeze together the grip and make it much badder than the pen itself. Where does Kohlfeldt say that? On page 247I of the record is Kohlfeldt's discussion of her invention and about at line 34, Kohlfeldt explains that with the device, the grip of the writing instrument can be, quote, substantially larger in diameter than the writing instrument itself. That's in the... It's hard to line up these line numbers, but about line 35... What page were you at again? 247I of the record. 247I. Where on the page? It's in the paragraph in about line 33. It begins, A further object. And three lines in, it says that the instrument will be substantially larger in diameter than the writing instrument itself. And then in the next column, it talks about how that's achieved with a thimble that can be threaded together. Admittedly, the figure in Kohlfeldt is hard to distinguish. What we have in our brief at page 6, we try to blow up the figure a lot and add some color to it so you can see what's happening here. Well, I guess the problem is that this is only one object of the invention. Well, but it's the object, Your Honor, that's achieved through the thimble. How do I know? Because Kohlfeldt goes on to explain in the middle of the next column that the shoulders of the thimble extend outwardly and oppositely, and then it talks about the thimble being screwed together or pulled apart. And if you look at the structure itself of Kohlfeldt, you see the very thin pencil and the much fatter gripping material. And what we have in McCall, what we have in the other references in this case, is we have a recessed grip made of the material that Quitek is claiming. There's no reason from this reference to say, take that material, take it out of the pen, put it on a shelf, put some lips on it, and put it right back in again. Does that have to be in the reference, does it? Does the motivation... The motivation does not have to come from the reference, Your Honor, but there has to be a reason somewhere. I mean, if I could talk sort of more globally about obviousness for a second. We've all heard the quote from KSR that putting things in the prior art that already exist together in an expected way is likely to be obvious. But what KSR was talking about in its citation to old cases like Anderson's Black Rock and Secreta was that when the art has solutions to known problems and an artisan comes along and takes those solutions and puts them together as the building blocks of a new invention, and each of those building blocks does in the new invention what it did in the past, that's likely to be obvious. Here, what Kohlfeldt is doing doesn't occur anymore in the combination. Kohlfeldt is no longer adjustable. The lips no longer hold the material in place. And let me talk about the other rejection. What does the application here say about the reason for the lips in the recess? The purpose of the shell and the lips and, in fact, the intermediate structure itself is to provide a dual durometer grip. What Whiteck invented was a very soft gripping member and then a shell around it that was less soft than the gripping member such that when you imagine a pen with a grip on it, there's an intermediate middle softness area between the super soft grip and the hardness of the pen. So there isn't an abrupt sharpness abutment between the two pieces. So when you hold the pen, your finger is mainly on the super soft layer that the next layer over is not the pen, but it's this intermediate softness protrusion that sticks up. The other advantage of Whiteck's invention is that the super soft material, this material that he uses can degrade over time through the oils of your hand and other contaminants. And the purpose of the shell is to encapsulate that on the bottom and the sides such that as the pen is used, stuff doesn't kind of leak in under the grip member and go into the middle. None of that is found in the prior art here. Does the claim include that? The claim does not include the advantages, no, Your Honor, but the claim includes the structure that leads to the advantages and, interestingly, the case that my opponent cites in his brief says exactly that, that you've got to look to the spec to see what the advantages are. That's part of the obviousness analysis. By spec, you mean the written description. I'm sorry, the written description of the invention and the application. Okay. You know, clearly this case is closer to the line than a lot of cases. We have a lot of claims in here where the rejection was confirmed, but the board properly went through the obviousness analysis that we've been given from the courts. The gram factors, the distinction between the claims invention and the prior art, that was not addressed by the examiner. I mean, for that reason alone, the examiner's rejection should have been reversed. This other stuff we're talking about, all these other reasons for obviousness, the board went ahead and addressed those, but it didn't really need to. Mr. Adams focuses very strongly on the fact that the board did not specifically discuss the examiner's rejection, first rejection. I have two responses to that, Your Honor. First, there was no rejection to specifically discuss. At the oral hearing, the board asked Mr. Adams, what was the basis of the examiner's rejection about these limitations? Because these were added. And his response was that he didn't know what the examiner's rejection was. I saw that in your brief. Okay. And so, the board was trying to figure out what was going on here, because remember, we had a request for re-examination that came in, based on a claim that lacked these limitations. And then we had an examiner who simply took that rejection and applied it to the later amended claims. And refused to hear the further argument. Exactly, Your Honor. Did not consider the claim limitation in the Kohlfeldt-McCall rejection. And in the 488 and 442 rejection, which we haven't really discussed yet, the examiner, as Pentel admits again today, the examiner incorrectly attributed to the prior art a feature that it lacked. The 488 publication does not have a main body for the recessing. That was the sole reason that the examiner gave for writing the rejection. So, when it gets to the board, the board has a rejection that is clearly legally deficient. There's hardly any reason to dispute that. And what Pentel does, at the board stage, when it's already before the board of prosecution is over, Pentel starts raising a lot of other references. And says, oh, this feature is over here. This feature is over here. The board would have been within its rights to say, that's all new. Maybe so, but it didn't fit. No, and it gave... And we're not supposed to sustain it on some ground that they didn't adopt, right? Your Honor, you could sustain it on the ground that the rejections were flawed. No, but we're not supposed to sustain it on the argument that you're making now. They could have rejected it on some other basis. They did, Your Honor. And you don't need to sustain it for my argument. And that's the point I'm trying to make. And I apologize if I'm not doing it well. The board started its analysis in its decision, which is here on review, by saying, the examiner didn't address this. This isn't in the prior art. We've got to reverse for that reason. Then the board tacked on an analysis of their obviousness theories. Now, we can call that dicta. We can call that the board trying to give him due process. We can look at it whatever we want. But I think that even if the court might disagree with some of that analysis, which does follow case law, that still doesn't get you to a reversible error here. It's confusing for us to have the board uphold the applicant or the patent in this way, Claim 6. Shouldn't we have a rule that says the board has to only refuse to approve patents rather than agree with them? Wouldn't that be easier for us? Sorry. A rule that said that the board was only permitted to affirm? I was just being... Yeah. Just worrying you unnecessarily. Thank you. I mean, the board has a decision in front of it. It's got to make a call one way or another. Judge Plaguer is just trying to get a grip on this. Thank you. Thank you. Let me go back to this before. It is a very common type of invention. It is something that we see, I think, in the recess group here. One of you might have one too. And so when you see that and you hear about these shells and we find somehow a reference from the 1930s that lo and behold has a shell in it, that you think, well, then you can just put all this stuff together. But the 1930s reference to Kohlfeldt was for a very particular purpose and that is just not accommodated by this combination. Same with the 488 publication. The 488 has abutments that basically stay in place so that when you slip on the grip, the abutments will stop it from moving rearward. Well, if you go and put that in the recess, you don't need those abutments anymore. So, tell me, going back for a moment here, if there's an alternative ground for the board decision, where do I find that? The alternative ground? Yeah, because I understood you were saying that they really didn't, that their discussion of the obviousness of a lack of obviousness in 2006 was trying to get them into the university agenda on different grounds. Where is that? Okay,  if Your Honor, look at page 818, which is the rejection based on the 488 and the 442, and I'll address that one first because that's the order that the board did it in. That's the analysis of the actual rejection that was made by the examiner and the final, complete sentence of that says, because the main body having a recess is not described in the 488 publication, which Pentel seems to agree with, and none of the secondary references were characterized as meeting this deficiency, which at this point in the process they were not, we are compelled to reverse the rejection of Claim 6. So there's their... Well, but that's whether you're using something based on the 488 publication. That was the basis for the rejection, Your Honor. They can't affirm a rejection on another basis if they had affirmed on what Pentel was presenting to this Court. That would have been a new grounds of rejection. But they go on to discuss the Coat Belt and these other rejections. Correct, Your Honor. And so let me direct the Court's attention to page A19 at the final sentence of the first full paragraph. The board says, the examiner did not articulate an adequate reason as to why the thimble with shoulders of Coat Belt would be utilized in the recess of McCall's writing instrument. That is the precise... That's the obvious rejection that we've been talking about. I thought you were saying there's some alternative ground here that made it unnecessary for us to reach that. Well, Your Honor, I'm not saying there's an alternative ground. I'm saying that those two very straightforward... So we do have to reach the obvious question. You have to reach the question first with the 488 and 442 of whether or not the 488 teaches a recess. It doesn't. Pentel admits. For the second rejection, Coat Belt-McCall, you have to reach the issue of whether or not the examiner articulated a reason why you would put the shell of Coat Belt into the recess of McCall. The examiner did not articulate any reason for doing that. Not that the board disagreed, but the examiner didn't articulate a reason. Help me understand that little connection there. Are we reviewing what the examiner failed to do or did do or didn't do or are we reviewing the board's independent conclusions with regard to whether Claim 6 is or is not obvious on the record? You're reviewing the board's analysis of what the examiner did and the board's reasoning. Of what the examiner did? Of what the examiner did. I see I'm out of time, but please continue. The rejection that was initially made by the examiner but my question is why aren't we reviewing what the board did independently? Well, you are reviewing what the board did. The board made two determinations. The first determination was that a reference lacked what the examiner said was in it. The second determination is that the examiner did not appropriately treat limitation in the board. Withstanding the examiner's failure, it still is not obvious even if you consider all the additional arguments Pentel raises at the board. That's my point. Okay. We have to deal with that too. I don't think you do have to deal with that, Your Honor, because if you agree with the board that the examiner's rejection was failed, the examiner failed to make a primary case, you can affirm for that reason alone. So what you're saying is that even if this record shows a motivation to combine, if the examiner didn't articulate that, the board can reverse the examiner just on that basis alone and that we should affirm the board on that basis alone. I'm saying close to that, Your Honor. Let me change a little bit that if the rejection that Pentel is suggesting now would have been a different rejection under this court's case law, for example, for new grounds of rejection, that the board could not have affirmed the examiner's rejection based on their new theories. But the board did something more here. Not only, and I admit that that could be seen as a hyper-technical way of affirming, but the board went further. The board could have stopped and said, the examiner didn't give us a good reason, so we're done. Reversed. They said, but let me go and let me explain to you, Pentel, the problems we see with your reasons. I think in doing that the board went further than it normally would have to. Here's the problem. Position one, right? At that point, what is the status of the applicants, or in this case it was a re-issue, wasn't it? It was a re-examination. What is the status of the claim? I guess because it's a re-examination, the assumption is it's a valid claim, but it was a new claim. So what is the status of the claim if there's an absence of a valid examiner's rejection? At that point, what is the status of the claim? It's unrejected. It's unrejected. What does that mean? It means just that. The board can't issue the patent. It goes right back to the examiner, and the examiner could, if the examiner wanted to, institute a new rejection of his own at that point. So the  us is really whether the examiner had a valid rejection at this point. Exactly, Your Honor, and that's what the board was reviewing. That's what the board was reviewing. That's what we have to decide. Correct, Your Honor, and that doesn't validate Claim 6. It does not validate Claim 6, except in view of this particular rejection, and when this amendment was added, let me make one final point, when this rejection was added, that was the time in the inter-party process at which Pentel had an absolute right to suggest any rejections that they could think of. They had that opportunity for these claims. And they did that in their additional briefing and argument. They didn't do it when they had an opportunity to. They didn't do it at the point in prosecution, Your Honor, where they were supposed to. When the claims were brought in by Quitek before the examiner, right then, in an inter-party re-exam, Pentel could come in and say, wait, don't issue these claims, let me show you all these other rejections. Suppose they come up with a reason that the examiner did not agree with. If they do that, then they have an appeal right and the board has to address the propriety of the rejection that they suggested and the examiner did not. Now, they had the opportunity before the board, after the examiner was done with it, to raise additional They don't procedurally have an official opportunity, they just put it in their briefs and they argued it to the board. And the board answered it. In this case, if we affirm, is the examiner at liberty to reject Claim 6 again on a different ground? On a different ground, the examiner could, the central reexamination unit could institute a new rejection at this point, but let me make this clear, this reexamination as far as the interparty's ability to add things is over. So, Pentel could not suggest a new rejection for this proceeding. This proceeding would be terminated. This proceeding, well, it would be terminated if the examiner did not enter their own rejection. That's something the examiner has the authority to do. I cannot speak at all to whether the examiner would or would not do that. So the examiner has the authority, but Pentel doesn't have the authority to raise that point at this point. Not at this point. They did have the ability to do it during prosecution and they failed to do so. Thank you very much. Thank you, Your Honor. Mr. Adams. Yes, Your Honor. I want to point out that the rejection of Claim 6 based on McCall and Villacoppo, the reasons and the motivation for the rejection the examiner gave, they appear on A-911, A-925, and A-929. The examiner gave the motivation and explains why it would have been obvious to modify the references as she did in the rejection. Could you point to us where the examiner said that so we can look at it? In A-929, the examiner stated that one of the orders of the art would understand from reading McCall that the grip or bladder may be placed in a recess like the illustrated in the embodiment in order to make the grip flush with the exterior surface that the writing implements. On A-925, the examiner stated, quote, McCall, apostrophe 599, does not give explicit details on how the grip is removable. Kohlfeldt gives details on how a similar grip is removably mounted to the writing implements. Accordingly, the combination of McCall, apostrophe 599, with Kohlfeldt, would predictably result in the claimed invention. So, clearly, there was motivation and reasoning given by the examiner. Again, the board did not address this rejection that the examiner made. The board never touched on it. It didn't discuss it. Do you agree that you said to the board, I don't know what the rejection was? Oh, no. I recall being asked the question about what did the examiner do, and I said I didn't know what was in the examiner's mind. I recall that, but I don't recall saying I don't know what the rejection was. A quick point on the examiner's mistake, your Honor. The examiner made a mistake in interpreting the claim. This was apparent to the board immediately. It was apparent to everybody. Wouldn't the board have an obligation at this point in this inter- parties setting to remand it for clarification or correction? Look at the effects of what happened by the board not doing that. This improper interpretation of the claim causes the one rejection to be just routinely wiped out. What saves the other rejection is that the art itself happens to be good enough to fulfill what the board  mind. The board picked it up by the bootstraps and recognized as she went along that oh, I misinterpreted it, but she never fixed the rejection based on the 488 publication. But the point we're trying to tell is we're extremely prejudiced. If this error isn't corrected, we can't go back and rely on these references downstream. You could combine the 488 with McCall and have a much better rejection than what the examiner has in front of her. So the point is that the prejudice that befalls Pentel in this inter- parties re- exam, the board did have an obligation, I think, to remand back. They do it often enough when they want clarification. They should have done it in this case. And hence you can answer a lot of the shortcomings of the so-called rejection. If you combine the references as done by the examiner, again, if we go back and start at the  with the fact that the grip itself is normal, it's undisputed, that's obvious. There's no attacking the examiner. There's no asking whether or not to be obvious to mount the viscoelastic material on the shell. That's already conclusively determined in this case. The only issue starting from there is would it have been obvious if you wanted to make the grip flush to put it in a recess? And McCall, that's the examiner's rejection, and she said yes, she gave the motivation for it. The issue isn't whether there's redundancy between the lip and the shoulders, whether you can't elongate the shell anymore. Once you substitute the viscoelastic material, the bladder of McCall onto Caulfield's shell, it's not arguable anymore. It's not whether it would be obvious. It's conclusively already been determined to be obvious. Those rejections have not been appealed. That's the law of the case. That's the starting point to analyze Claim 6. And the examiner did that, but the board did not address the examiner's rejection. All right. Thank you very much. Your time has expired. Appreciate counsel's arguments. The case is submitted.